February 9, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1224

VALERIE WATTERSON, ET AL.,

Plaintiffs, Appellants,

v.

EILEEN PAGE, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Shane Devine, U.S. District Judge]

Before

Selya, Circuit Judge,

Campbell, Senior Circuit Judge,

and Boudin, Circuit Judge.

Charles E. Dibble with whom Charles E. Dibble, P.C. was on brief

for appellants.
Mark H. Gardner with whom Craig F. Evans and Evans & Hermann were

on brief for appellees Janet Seymour and Roland Smith.

February 9, 1993

CAMPBELL, Senior Circuit Judge. The mother and

grandparents of two minor children brought this action in the

district court under 42 U.S.C. 1983 and state law against a

social worker and two psychologists who were involved in the

State of New Hampshire's investigation into reports that the

children had been sexually abused. The two psychologists

moved to dismiss the complaint against themselves, and the

court allowed their motion. It ruled that they had absolute

immunity from suit under 42 U.S.C. 1983 and state statutory

immunity from the pendent state law claims. We affirm,

although on somewhat different grounds as to the 1983

claims.

I.

In considering a motion to dismiss, a court must

take the allegations in the complaint as true and must make

all reasonable inferences in favor of the plaintiffs.

Monahan v. Dorchester Counseling Ctr., Inc., 961 F.2d 987,

988 (1st Cir. 1992). Here the district court also took into

account certain facts set out in public documents plaintiffs

attached to an opposition they filed to the motion to

dismiss. Ordinarily, of course, any consideration of

documents not attached to the complaint, or not expressly

incorporated therein, is forbidden, unless the proceeding is

properly converted into one for summary judgment under Rule

56. See Fed. R. Civ. P. 12(b)(6). However, courts have made

-2-

narrow exceptions for documents the authenticity of which are

not disputed by the parties; for official public records; for

documents central to plaintiffs' claim; or for documents

sufficiently referred to in the complaint. See, e.g., Romani

v. Shearson Lehman Hutton, 929 F.2d 875, 879 n.3 (1st Cir.

1991) (considering offering documents submitted by defendants

with motion to dismiss claim of securities fraud); Fudge v.

Penthouse Int'l, Ltd., 840 F.2d 1012, 1014-15 (1st Cir.)

(considering allegedly libelous article submitted by

defendants with motion to dismiss), cert. denied, 488 U.S.

821 (1988); Mack v. South Bay Beer Distrib., Inc., 798 F.2d

1279, 1282 (9th Cir. 1986) ("[O]n a motion to dismiss a court

may properly look beyond the complaint to matters of public

record and doing so does not convert a Rule 12(b)(6) motion

to one for summary judgment."); see also In re Wade, 969 F.2d

241, 249 & n.12 (7th Cir. 1992).

Here, all or most of the above-mentioned elements

are present. Plaintiffs, moreover, introduced the documents

themselves, in order to bolster their argument against

defendants' motions to dismiss. See Cortec Indus., Inc. v.

Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he

problem that arises when a court reviews statements

extraneous to a complaint generally is the lack of notice to

the plaintiff . . . . Where plaintiff has actual notice . . .

and has relied upon these documents in framing the complaint

-3-

the necessity of translating a Rule 12(b)(6) motion into one

under Rule 56 is largely dissipated."), cert. denied, 112 S.

Ct. 1561 (1992); Berk v. Ascott Inv. Corp., 759 F.Supp. 245,

249 (E.D. Pa. 1991) ("[W]hen a plaintiff has admitted the

authenticity of a document . . ., a court may consider that

document in ruling on a motion under Fed. R. Civ. P.

12(b)(6).").

Like the court below, therefore, we treat the

documents submitted by plaintiffs the Abuse and Neglect

Petitions, the Pittsfield District Court orders, defendant

Seymour's written report to defendant Page, and Seymour's

affidavit as part of the pleadings. The facts that emerge

are as follows:

Plaintiff-appellant Valerie Watterson is the

natural mother of two minor girls born in 1979 and 1984

respectively ("the older child" and "the young child";

collectively "the children" or "the girls"). Plaintiff-

appellant Violet Bruillard is the natural mother of Valerie

and grandmother of the children. Plaintiff-appellant Paul

Bruillard is Violet's husband, and stepgrandfather to the

children. The girls lived with all three appellants in a

house belonging to Violet and Paul in New Hampshire. The

girls' natural father, who separated from Valerie in 1981, is

not a party to this action.

Since birth, the older child has had only partial

-4-

hearing and partial speech abilities. Beginning in 1985,

when she was six years old, the child attended the Green

Acres School in Manchester, New Hampshire, as part of a

program for the hearing impaired. In January 1986, school

officials reported unusual behavior by the child to the New

Hampshire Division for Children and Youth Services (DCYS),

including symptoms of neglect and possible sexual abuse.

DCYS officials investigated the case and identified a

fourteen-year-old boy who rode to school on the child's

school bus as the probable abuser. Steps were taken to

remedy the situation and the case was closed.

In March 1987, however, school officials again

wrote to DCYS to report continuing symptoms of sexual abuse.

Defendant Eileen Page (who is not an appellee), a state

social worker assigned to the case by DCYS, filed a Petition

for Neglect in the Pittsfield District Court, State of New

Hampshire, on May 18, 1987. See N.H. Rev. Stat. Ann. 169-

C:7. The petition alleged that the older child was subject

to neglect by Valerie Watterson, citing the reports of the

Green Acres School officials that the child was describing

sexual matters in detail to other children and her teacher,

fondling herself and other children, and complaining about

pains in her stomach and lower abdomen. The petition also

alleged that the child wore dirty clothing to school, was

unkempt and unwashed, and appeared to be making her own lunch

-5-

of mayonnaise sandwiches.

On May 28, 1987, the Pittsfield District Court

conducted a preliminary hearing and ordered that the child,

then eight years of age, be referred to Concord Psychological

Associates for counseling. See N.H. Rev. Stat. Ann. 169-

C:15, 16. The court also granted legal supervision of the

child to DCYS, left placement of the child with Valerie

Watterson, and ordered DCYS to facilitate the counseling

sessions and "to conduct an appropriate investigation,

including, but not limited to home environment study."

Beginning June 11, 1987, the child attended weekly counseling

sessions at Concord Psychological Associates with defendant-

appellee Janet Seymour, a psychologist who was not yet

certified. Seymour was supervised by defendant-appellee

Roland Smith, a board-certified psychologist and director of

Concord Psychological Associates.

On June 22, in lieu of a scheduled adjudicatory

hearing and without a finding of neglect, DCYS and appellant

Valerie Watterson entered an agreement for issuance of a

consent order. See N.H. Rev. Stat. Ann. 169-C:17. The

consent order mandated that, "[The child] shall continue

counselling at Concord Psychological Associates, with a

report from Concord Psychological Associates filed with this

court not later than forty-five days from the date of this

agreement." The order also stated that DCYS would assist

-6-

Valerie in transporting the child to the counseling sessions,

that Valerie would submit to psychological evaluation, that

DCYS would complete a home study with Valerie's cooperation,

and that the court retained jurisdiction over the case.

Seymour with the aid of a sign-language interpreter

conducted a total of seven psychotherapy sessions with the

child from June 11 to July 22, 1987. On Seymour's

initiative, the younger child, then three years old, also

attended one of the sessions. On July 24, 1987, Seymour

reported her findings in writing to social worker Page,

stating that the older child revealed during therapy that her

grandmother and mother (appellants Violet Bruillard and

Valerie Watterson) repeatedly took the girls against their

will to a house where the older child was required to sleep

in close proximity with boys and a grown man. On one

occasion, one male allegedly fondled the older child. The

younger child was allegedly threatened with a large knife and

subjected to fondling by a young boy while Valerie and the

older child watched. The older child also reported being

paid for visiting the house, being told not to reveal the

visits to anyone, and eventually being informed by her mother

in July 1987 (during the period of the counseling sessions)

that she would no longer take the girls to the house.

On the basis of these findings, Seymour concluded

that the girls' grandmother, Violet, may have been

-7-

"prostituting [the older child] and probably [the young

child] to a group of people, likely a sex ring." Seymour

stated that Valerie, the mother, was only partially aware of

the events at the house but failed to protect the children

from the abuse. Seymour concluded her report by recommending

that DCYS initially confront Valerie Watterson with the

accusations and then, if necessary, remove the girls from

appellants' home.

The same day Seymour issued her report, Page sought

and obtained an ex parte order from the Pittsfield District

Court for the immediate removal of both children from

appellants' home, citing the information gathered by Seymour.

See N.H. Rev. Stat. Ann. 169-C:6. That evening law

enforcement officials took the two girls from appellants'

home and placed them in separate foster homes. On July 27,

1987, Page filed new Abuse and Neglect Petitions with regard

to the two children, alleging that they were subject to

sexual abuse by Valerie Watterson and Violet Bruillard. See

N.H. Rev. Stat. Ann. 169-C:7.

On September 24, 1987, in connection with the

proceedings, Seymour swore out an affidavit detailing her

findings regarding the two children. In her affidavit,

Seymour attested that she believed, based on her weekly

psychotherapy sessions with the older child and the single

session with the young child, that the children were

-8-

subjected to some sort of child prostitution/satanic worship

activity (involving "the killing of animals and children,"

"ugly hats (perhaps headdresses) with horns," and "men in

robes"), at a location identified by the girls as "Mike

Chickering's house." Seymour's affidavit was apparently used

by the Merrimack County Sheriff's office to obtain a search

warrant for the Chickering house, where the only evidence of

child prostitution and satanic worship found by police was a

catalog for pornographic films and an ordinary letter opener.

On May 25, 1988, after eight days of testimony, the

Pittsfield District Court ruled that no evidence supported

the allegations of ritual sexual abuse occurring at the

Chickering residence and so dismissed those particular

charges. See N.H. Rev. Stat. Ann. 169-C:18, 19. However,

the court stated that it was "obvious" that the older child

had been sexually abused and that the young child suffered

some traumatic incident that could be classified as abuse.

Valerie Watterson and Violet Bruillard appealed the latter

findings to the superior court, see N.H. Rev. Stat. Ann.

169-C:28, but DCYS voluntarily withdrew the Abuse and Neglect

Petitions before further proceedings were conducted.1

1. The record does not indicate reasons for the withdrawal
of the abuse petitions. Nor does any document state whether
and when the children were returned to appellants, indicating
that there may have been subsequent proceedings regarding the
children not at issue here. Appellants' brief states only
that the younger child remained in foster homes for a total
of two-and-one-half years, and that the older child currently

-9-

Appellants brought this civil action on July 12,

1990, in the United States District Court for the District of

New Hampshire against DCYS social worker Page and appellees

Seymour and Smith of Concord Psychological Associates.

Appellants alleged in their complaint, as amended, that all

three defendants were liable pursuant to 42 U.S.C. 1983 for

depriving appellants of their liberty and property without

due process of law. The complaint contained pendent state

law claims against Seymour and Smith for failing to act with

due care with regard to professional standards. The amended

complaint also brought state law claims of malicious

prosecution and abuse of process against defendant Page, who

is not a party to this appeal.2

Seymour and Smith moved to dismiss all claims

against them under Fed.R.Civ.P. 12(b)(6) on grounds that they

are immune from civil liability. The district court granted

these motions on August 12, 1991, holding that the two

psychologists had absolute quasi-judicial immunity from the

1983 claims as court-appointed psychologists, and had state

statutory immunity from liability under the state law claims

lives apart from appellants in a residential learning center
for deaf children in Massachusetts.

2. The district court assumed that the claims of malicious
prosecution and abuse of process also applied to appellees
Seymour and Smith and held that they had statutory immunity
from those claims. However, appellants clarify on appeal
that those two state law claims apply only to defendant Page.

-10-

pursuant to the New Hampshire Child Protection Act. See N.H.

Rev. Stat. Ann. 169-C:31. Appellants appeal from the final

judgment dismissing the complaint against Seymour and Smith

issued pursuant to Fed. R. Civ. P. 54(b) on February 7, 1992.

II.

A. Section 1983 Claims

We need not decide whether the district court

correctly held that a court-appointed psychologist is

entitled to absolute immunity from claims in connection with

her duties as a quasi-judicial officer. Compare Myers v.

Morris, 810 F.2d 1437, 1466-67 (8th Cir.) (holding that

court-appointed psychologists have absolute immunity), cert.

denied, 484 U.S. 828 (1987) with Hodorowski v. Ray, 844 F.2d

1210, 1215-16 (5th Cir. 1988) (refusing to extend absolute

immunity to child protective service workers). This is a

difficult and, in this circuit, novel question, on which

there is no conclusive authority. See Frazier v. Bailey, 957

F.2d 920, 931 n.12 (1st Cir. 1992); see also Snell v.

Tunnell, 920 F.2d 673, 686-89 (10th Cir. 1990) (reviewing

various court positions on absolute immunity for child abuse

investigation participants), cert. denied, 111 S. Ct. 1622

(1991). In Burns v. Reed, 111 S. Ct. 1934 (1991), the

Supreme Court cautioned that the "presumption is that

qualified rather than absolute immunity is sufficient to

protect government officials in the exercise of their

-11-

duties." Id. at 1939. The Court went on to say that it had

been "'quite sparing' in [its] recognition of absolute

immunity, and [had] refused to extend it any 'further than

its justification would warrant.'" Id. (citations omitted).

We do not suggest that absolute immunity could not exist for

these psychologists in the present circumstances. But since

for more conventional reasons appellees are clearly entitled

to prevail, we rest our decision exclusively on those

reasons.

Except perhaps for the allegation that Seymour gave

false testimony in court, appellants have alluded to no facts

that seem even remotely sufficient to show a violation of the

federal constitution by the two psychologists. And even

assuming Seymour testified falsely, and even assuming her

false testimony might otherwise give rise to a claim of

constitutional dimensions, she would still be immune from

suit under 1983 because of the absolute immunity afforded

to witnesses for their testimony in the course of judicial

proceedings. Infra. We, therefore, sustain the dismissal of

the 1983 claims.3

3. In moving to dismiss, appellees relied exclusively on
their argument that the court-appointed psychologists had
quasi-judicial immunity for all their challenged activities,
although they reserved the right to raise other defenses
including the failure to state a claim for relief. While
issues not pursued in the district court ordinarily will not
be considered on appeal, Brown v. Trustees of Boston Univ.,

891 F.2d 337, 352 (1st Cir. 1989), cert. denied, 496 U.S. 937

(1990), we are free to affirm on any independently sufficient

-12-

To bring an action under 1983, a plaintiff must

show both the existence of a federal constitutional or

statutory right, and some deprivation of that right as a

result of defendants' actions under color of state law.

Willhauck v. Halpin, 953 F.2d 689, 703 (1st Cir. 1991).

Appellants claim that Seymour and Smith acted under color of

state law to deprive them of their right to due process of

law in violation of the Fifth and Fourteenth Amendments. We

shall assume that the Pittsfield District Court order for

counseling and reporting by Concord Psychological Associates

provided a sufficient basis for these private defendants to

be acting under color of state law. See Frazier, 957 F.2d at

928; Rodriques v. Furtado, 950 F.2d 805, 813-14 (1st Cir.

ground, Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 6 (1st

Cir. 1992). This is especially so where our review is de

novo. Willhauck v. Halpin, 953 F.2d 689, 704 (1st Cir.

1991).
We conclude that in these circumstances it is not
improper for us to uphold the dismissal on the ground that
appellants failed to make out any claim for the deprivation
of a federal constitutional right, even though this
particular issue was not explored below. Appellants have
explained their theory of the case in the course of arguing
against absolute immunity for appellees, and described at
oral argument the basis for their federal claims.
Furthermore, we take all of appellants' allegations as true
and make our determination solely as a matter of law. Cf.

Brown v. St. Louis Police Dept., 691 F.2d 393, 396-97 (8th

Cir. 1982), cert. denied, 461 U.S. 908 (1983) (discussing

"special circumstances" that could make it "fundamentally
unfair" to consider alternative grounds on appeal). To send
the matter back to the lower court would be an exercise in
futility, especially given the additional defense of
qualified immunity which, although not discussed here, stands
as a further, seemingly insurmountable barrier to recovery.

-13-

1991). A likely alternative ground for affirming the

district court is qualified immunity. However, before even

reaching qualified immunity, a court of appeals must

ascertain whether the appellants have asserted a violation of

a constitutional right at all. Siegert v. Gilley, 111 S. Ct.

1789, 1793 (1991).

Appellants do not allege that the procedures

provided under New Hampshire law for child neglect and abuse

petitions, concededly followed in this case, are

constitutionally inadequate. See N.H. Rev. Stat. Ann. 169-

C:1 et seq.. Instead, they make a substantive due process

claim, viz., that by means of Seymour's report, appellees

deprived them of a constitutionally protected liberty

interest in family integrity, including the care, custody and

supervision of the children.4 Seymour is said to have

4. We see no other constitutionally protected interest or
right at stake. Damage to reputation alone does not
constitute a violation of a substantive due process right.
Paul v. Davis, 424 U.S. 693, 713 (1976). But cf. Petition of

Bagley, 128 N.H. 275, 284-85, 513 A.2d 331 (1986) (holding

that officials' determination that child abuse report had
foundation in fact and recordation in central registry
implicated plaintiffs' due process liberty interest under New
Hampshire constitution).
In addition, there are no allegations in the amended
complaint to support the conclusory claim that appellants
were deprived of some constitutionally protected property

interest, so we find the complaint fails to state a claim for
unconstitutional deprivation of property. See Fed. R. Civ.

P. 12(b)(6). The only property interest affected was, we
infer from the complaint's allegations, the loss of some
money and wages to attend the abuse proceedings and to pay an
attorney to represent them, neither of which constitutes,
standing alone, an unconstitutional deprivation of property.

-14-

conspired with Page to conduct an unauthorized investigation

of the family's affairs while also counseling the older

child. Seymour was allegedly negligent in her counseling,

and this negligent counseling and investigating supposedly

led to incorrect conclusions about the involvement of Valerie

and Violet in the sexual abuse of the girls.5 These

incorrect conclusions, contained in Seymour's report, enabled

DCYS to obtain court approval for the removal of the children

from appellants' home, thereby depriving appellants of their

constitutionally protected liberty interest in family

integrity.6 Appellee Smith's purported liability stems

solely from his allegedly inadequate supervision of Seymour

at Concord Psychological Associates.

Taking all of plaintiffs' allegations as true, we

see only three possible bases for the 1983 claim against

Seymour: first, she "conspired" with Page to investigate

5. Appellants do not allege the absence of grounds for
suspecting abuse by someone. They admit that, during visits
to her father, the older child witnessed repeated sexual
abuse of another child in a manner nearly identical to that
described by the older child to Seymour. In addition,
appellants admit that the older child was molested at age six
by a fellow student during bus rides to school.

6. While the scope and level of constitutional protection
for the liberty interests of grandparents probably differs
from that for parents' interests, compare Moore v. City of

East Cleveland, 431 U.S. 494, 500-06 (1977) with Stanley v.

Illinois, 405 U.S. 645, 651-52 (1972), appellants Violet and

Paul Bruillard, as grandparents who resided with the girls,
have interests at least sufficient to avoid dismissal of
their 1983 claims on grounds they have no constitutionally
protected right at stake.

-15-

appellants' family without express court authority and

direction to do so; second, she negligently counseled and

interviewed the children; and third, she presented false

testimony and withheld information from the court. The first

two theories fall short, however, of stating any federal

constitutional claim. While the Supreme Court has recognized

an abstract fundamental liberty interest in "family

integrity," the Court has never found that interest to be

absolute or unqualified. Frazier, 957 F.2d at 929-30. The

government has a compelling interest in the welfare of

children, and the relationship between parent and child may

be investigated and terminated by the state provided

constitutionally adequate procedures are followed. Santosky

v. Kramer, 455 U.S. 745, 766, 769 (1982). The right to

family integrity clearly does not include a constitutional

right to be free from child abuse investigations. See

Stanley v. Illinois, 405 U.S. 645, 649 (1972) (stating that

the State has a "right indeed, duty to protect minor

children through a judicial determination of their interests

in a neglect proceeding"); Weller v. Department of Social

Servs., 901 F.2d 387, 391 (4th Cir. 1990); Myers, 810 F.2d

at 1462. If while engaged in treating the children under

court direction, Seymour, in conjunction with Page, looked

into whether the children had been abused by appellants,

such a joint undertaking would not, without more, violate any

-16-

constitutional right of appellants.7 The second factual

basis, that Seymour performed the therapy sessions and

reported her findings with a lack of due care, at most states

a claim of negligence, which is insufficient to constitute a

deprivation of due process of law.8 Daniels v. Williams,

474 U.S. 327, 332-34 (1986).

Appellants' third allegation, that Seymour

conspired with Page to present false testimony to and

withhold material evidence from the court hearing the abuse

charges, fails for a different reason: all witnesses at

judicial proceedings have an absolute immunity from damages

liability based on their testimony. Briscoe v. LaHue, 460

7. Describing the investigation by Seymour and Page as a
"conspiracy" adds nothing to the charge; mere conclusory
allegations that defendants "conspired" are not enough in a
civil rights complaint to turn otherwise lawful actions into
a valid claim of unlawful conspiracy. See Glaros v. Perse,

628 F.2d 679, 685 (1st Cir. 1980).

8. Appellants allege without further explanation or factual
support in their complaint that Seymour conducted the
counseling sessions with reckless and callous indifference to
their constitutional rights. While reckless indifference, as
opposed to mere negligence, may be actionable under 1983,
see Torres Ramirez v. Bermudez Garcia, 898 F.2d 224, 227 (1st

Cir. 1990), no set of facts alleged in this complaint, or
reasonable inferences therefrom, could support a finding of
more than simple lack of due care. It was not Seymour's
counseling activities, as such, moreover, that injured
appellants. It was Seymour's report to Page, conveying the
story of possible abuse by appellants. Yet appellants admit
that the older child had been sexually abused by other
unidentified persons, see supra note 5, and the only alleged

problems with Seymour's report were purported omissions and
misinterpretations of certain facts. Seymour herself,
moreover, recommended that DCYS seek the cooperation of
Valerie Watterson before considering removal of the children.

-17-

U.S. 325, 326 (1983). This immunity applies even to public

officials who knowingly give false testimony. Id. at 345.

Seymour thus had absolute immunity for her testimony, even

assuming it was either false or incomplete.

The 1983 claim against Smith is based solely on

his actions as the supervisor of Seymour's counseling and

investigation. Because Seymour violated no constitutional

rights of appellants in her counseling and investigation, we

find even less basis for recovery against Smith for

supervising her. See Frazier, 957 F.2d at 931-32.

For these reasons, the 1983 claims against

Seymour and Smith were properly dismissed.

B. State Law Claims

The district court held that the two psychologists,

Seymour and Smith, had immunity from the state law claims

pursuant to a state statute, N.H. Rev. Stat. Ann. 169-C:31,

which immunizes persons who report suspicions of child abuse

to the proper state authorities in good faith.9 Appellants

9. N.H. Rev. Stat. Ann. 169-C:31 provides:

Anyone participating in good faith in the
making of a report pursuant to this
chapter is immune from any liability,
civil or criminal, that might otherwise
be incurred or imposed. Any such
participant has the same immunity with
respect to participation in any
investigation by the bureau or judicial
proceeding resulting from such report.

N.H. Rev. Stat. Ann. 169-C:29 requires that certain persons

-18-

argue that the district court misapplied the immunity statute

because their state law claims against appellees stem from

report suspected child abuse.

Any physician, surgeon, county medical
examiner, psychiatrist, resident, intern,
dentist, osteopath, optometrist,
chiropractor, psychologist, therapist,
registered nurse, hospital personnel
(engaged in administration, examination,
care and treatment of persons), Christian
Science practitioner, teacher, school
official, school nurse, school counselor,
social worker, day care worker, any other
child or foster care worker, law
enforcement official, priest, minister,
or rabbi or any other person having
reason to suspect that a child has been
abused or neglected shall report the same
in accordance with this chapter.

N.H. Rev. Stat. Ann. 169-C:30 describes how such reports
are to be made.

An oral report shall be made immediately
by telephone or otherwise, and followed
within 48 hours by a report in writing,
if so requested, to the bureau. Such
report shall, if known, contain the name
and address of the child suspected of
being neglected or abused and the person
responsible for the child's welfare, the
specific information indicating neglect
or the nature and extent of the child's
injuries (including any evidence of
previous injuries), the identity of the
person or persons suspected of being
responsible for such neglect or abuse,
and any other information that might be
helpful in establishing neglect or abuse
or that may be required by the bureau.

"Bureau" is defined as "the bureau of children, division for
children and youth services, department of health and human
services." N.H. Rev. Stat. Ann. 169-C:3 IV. This agency
is referred to herein as DCYS.

-19-

the lack of due care in performance of the counseling

services, not from Seymour's subsequent report of suspected

child abuse (which, appellants concede, is protected by the

immunity statute).

We reject appellants' argument. The injuries

alleged in their complaint are separation from the children,

damage to their reputations, and various forms of emotional

distress. No harm to the children as the result of their

being negligently counseled is alleged, nor was suit brought

on the children's behalf to complain of the alleged

malpractice. All the asserted harms resulted from the

state's removal of the children. Seymour's and Smith's sole

connection to that separation was Seymour's report to DCYS of

her suspicions that the girls were being sexually abused.

Clearly, Seymour's report of suspected abuse falls squarely

within the meaning of "a report pursuant to this chapter" as

defined by N.H. Rev. Stat. Ann. 169-C:31. See Petition of

Bagley, 128 N.H. 275, 280, 513 A.2d 331 (1986) (interpreting

provisions of the N.H. Child Protection Act). While

appellants contend that the Abuse and Neglect Petition would

not have been filed but for the allegedly negligent manner in

which Seymour conducted the counseling sessions, we find no

support in New Hampshire law, nor was any cited, for removing

the immunity protection of N.H. Rev. Stat. Ann. 169-C:31 if

the report is the product of negligently administered

-20-

psychotherapy. See State v. Howland, 125 N.H. 497, 500-02,

484 A.2d 1076, 1077-78 (1984) (discussing the scope of

statutory immunity under N.H. Rev. Stat. Ann. 169-C:31).

III.

For the reasons stated above, we affirm the

district court's dismissal of appellants' complaint against

appellees Seymour and Smith.

Affirmed. Costs to appellees.

-21-